No. 23-50491

# In the United States Court of Appeals for the Fifth Circuit

———————

Career Colleges & Schools of Texas,

*Plaintiff-Appellant,*

v.

United States Department of Education, et al.,

*Defendants-Appellees.*

———————

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:23-cv-00433-RP

———————

**PLAINTIFF-APPELLANT'S OPPOSED MOTION FOR INJUNCTION PENDING APPEAL**

———————

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

Allyson B. Baker
Stephen B. Kinnaird
Michael Murray
Sameer P. Sheikh
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202)-551-1700

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

No. 23-50491

*Career Colleges & Schools of Texas v. U.S. Dep't of Educ., et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| Plaintiff-Appellant: | Career Colleges and Schools of Texas |
| Counsel for Plaintiff-Appellant: | PAUL HASTINGS LLP<br>Allyson B. Baker (allysonbaker@paulhastings.com)<br>Stephen Kinnaird (stephenkinnaird@paulhastings.com)<br>Michael Murray (michaelmurray@paulhastings.com)<br>Sameer P. Sheikh (sameersheikh@paulhastings.com)<br>Tor Tarantola (tortarantola@paulhastings.com)<br><br>CANTEY HANGER LLP<br>Philip Vickers (pvickers@canteyhanger.com)<br>Katherine Hancock (khancock@canteyhanger.com) |
| Plaintiff-Appellant's member schools participating in the William D. Ford Federal Direct Loan Program: | Arlington Career Institute<br>Asher College<br>Auguste Escoffier School of Culinary Arts<br>Avenue Five Institute<br>Center for Advanced Legal Studies<br>Collectiv Academy<br>Concorde Career College, Dallas<br>Concorde Career College, Grand Prairie<br>Concorde Career College, San Antonio<br>Culinary Institute LeNotre<br>Deluxe Barber College<br>ECPI University<br>Fortis College, Houston South |

Fortis Institute, Houston North
Lincoln College of Technology
McAllen Careers Institute
Ogle School Hair Skin Nails, Arlington
Ogle School Hair Skin Nails, Dallas
Ogle School Hair Skin Nails, Denton
Ogle School Hair Skin Nails, Fort Worth
Ogle School Hair Skin Nails, Houston
Ogle School Hair Skin Nails, Hurst
Ogle School Hair Skin Nails, North Dallas
Ogle School Hair Skin Nails, San Antonio
PCI Health Training Center, Dallas
PCI Health Training Center, Richardson
Pima Medical Institute
Pima Medical Institute, San Antonio
Southern Careers Institute, Austin
Southern Careers Institute, Brownsville
Southern Careers Institute, Corpus Christi
Southern Careers Institute, Harlingen
Southern Careers Institute, Pharr
Southern Careers Institute, San Antonio North
Southern Careers Institute, San Antonio South
Southern Careers Institute, Waco
Southwest University at El Paso
The College of Health Care Professions, Austin
The College of Health Care Professions, Dallas
The College of Health Care Professions, Fort Worth
The College of Health Care Professions, Houston
    Southwest
The College of Health Care Professions, McAllen
The College of Health Care Professions, Northwest
The College of Health Care Professions, San Antonio
The College of Health Care Professions, San Antonio
    South
The Ocean Corporation
Tulsa Welding School & Technology Center
Vogue College of Cosmetology, Fredericksburg Rd.
Vogue College of Cosmetology, Ingram Rd.
Vogue College of Cosmetology, Lubbock
Vogue College of Cosmetology, McAllen

| | West Coast University |
|---|---|
| | Western Technical College, Main |
| Defendants-Appellees: | United States Department of Education |
| | Miguel Cardona, in his official capacity as Secretary of Education |
| Counsel for Defendants-Appellees: | United States Department of Justice |
| | Brian M. Boynton |
| | Marcia Berman |
| | Christine L. Coogle (christine.l.coogle@usdoj.gov) |
| | Cody T. Knapp (cody.t.knapp@usdoj.gov) |
| | R. Charlie Merritt (robert.c.merritt@usdoj.gov) |
| | Jennifer L. Utrecht (jennifer.l.utrecht@usdoj.gov) |
| Other interested entities: | Career Education Colleges and Universities |
| | Institutions that participate in Title IV programs (see list at https://fsapartners.ed.gov/knowledge-center/library/federal-school-code-lists/2023-04-27/2023-24-federal-school-code-list-participating-schools-may-2023) |

/s/ *Allyson B. Baker*
Allyson B. Baker

*Attorney of record for*
*Plaintiff-Appellant*

iv

# TABLE OF CONTENTS

Introduction .................................................................................................1

Statement ....................................................................................................4

Standard .....................................................................................................6

Argument ....................................................................................................6

   I.   CCST Will Likely Succeed on the Merits ................................6

    A.  The Department lacks authority to adjudicate borrower-defense "claims" or recoupment actions. ............................................6

    B.  The Rule's borrower defenses, evidentiary presumptions, and full-discharge remedy are unlawful. ........................................8

   II.  The Rule Causes Irreparable Harm ..........................................12

    A.  Compelled Compliance and Compliance Costs...................13

    B.  Change in Conduct to Avoid Risk of Closed-School Liability ...........19

    C.  Threat of Unlawful Adjudications ......................................20

   III.  The Balance of Harms Favors Postponement......................22

   IV.  The Public Interest Favors Postponement ..........................22

   V.  Postponement Should Not Be Party-Restricted ...................22

Conclusion .................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for Hippocratic Medicine v. FDA*,
   No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) .............................23

*Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*,
   516 U.S. 264 (1996)........................................................................................7

*BST Holdings, L.L.C. v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) .................................................................23

*Canal Auth. of State of Fla. v. Callaway*,
   489 F.2d 567 (5th Cir. 1974) .......................................................12

*Chemical Mfrs. Ass'n v. Dep't of Transp.*,
   105 F.3d 702 (D.C. Cir. 1997).......................................................11

*In re EPA*,
   803 F.3d 804 (6th Cir. 2015) ...........................................................23

*FCC v. Prometheus Radio Project*,
   141 S. Ct. 1150 (2021)......................................................................9

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
   535 U.S. 743 (2002)........................................................................7

*Feds for Med. Freedom v. Biden*,
   63 F.4th 366 (5th Cir. 2023) .........................................................24

*First Pentecostal Church of Holly Springs v. City of Holly Springs*,
   959 F.3d 669 (5th Cir. 2020) .................................................6

*Granfinanciera, S.A., v. Nordberg*,
   492 U.S. 33 (1989)..........................................................................7

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) .................................................8

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........................................................................11

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
59 U.S. 272 (1855)............................................................................8

*Nat'l Fuel Gas Supply Corp. v. FERC*,
811 F.2d 1563 (D.C. Cir. 1987).......................................................7

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................23

*Pacific Frontier v. Pleasant Grove City*,
414 F.3d 1221 (10th Cir. 2005) ......................................................13

*Paulsson Geophysical Servs., Inc. v. Sigmar*,
529 F.3d 303 (5th Cir. 2008) ..........................................................17

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
66 F.4th 593 (5th Cir. 2023) ...................................................*passim*

*RLC Indus. Co. v. CIR*,
58 F.3d 413 (9th Cir. 1995) ..............................................................7

*Roark & Hardee LP v. City of Austin*,
522 F.3d 533 (5th Cir. 2008) ..........................................................21

*Stern v. Marshall*,
564 U.S. 462 (2011).............................................................................7

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) ...........................................................24

*Thomas v. Union Carbide Agric. Prod. Co.*,
473 U.S. 568 (1985)..........................................................................21

*United States v. Baylor Univ. Med. Ctr.*,
711 F.2d 38 (5th Cir. 1983) .............................................................22

*United States v. Nordic Village, Inc.*,
503 U.S. 30 (1992).............................................................................7

vii

*Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*,
  16 F.4th 1130 (5th Cir. 2021) ...............................................................13

*Weingarten Realty Invs. v. Miller*,
  661 F.3d 904 (5th Cir. 2011) .................................................................22

*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022)..............................................................................8

*West Virginia v. EPA*,
  577 U.S. 1126 (2016) ..............................................................................23

*Whole Woman's Health v. Jackson*,
  13 F.4th 434 (5th Cir. 2021) ....................................................................6

## Statutes

5 U.S.C.

  § 705.....................................................................................................1, 22
  § 706(2)(A) ...............................................................................................9

20 U.S.C.

  § 1087(c)(1) .............................................................................................12
  § 1087d(a)(3) .............................................................................................7
  § 1087e(h).......................................................................................1, 6, 8, 9
  § 1099c(c) ................................................................................................21

Higher Education Act..........................................................................*passim*

## Regulations

34 C.F.R.

  § 668.71...................................................................................................13
  § 668.71(c) .................................................................................................9
  § 668.72...................................................................................................13
  § 668.74...................................................................................................13
  § 668.75...............................................................................................9, 13
  § 668.117(b) ...............................................................................................5
  § 668.125...................................................................................................5

§ 668.125(d) .................................................................................5

§ 668.125(e)(2) .....................................................................5, 9, 21

§ 668.171 ...............................................................................21

§ 668.500 ...............................................................................13

§ 668.501 .............................................................................9, 13

§ 685.214(a)(2)(i) ...................................................................5, 12

§ 685.214(c)(1) ........................................................................5

§ 685.401(a)-(b) .....................................................................4, 9

§ 685.401(b) ..........................................................................4, 5

§ 685.401(b)(5) .........................................................................13

§ 685.401(e) .......................................................................10, 11

§ 685.402 ................................................................................4

§ 685.403 ................................................................................4

§ 685.405 ..........................................................................4, 21

§ 685.406(b)(2) ....................................................................4, 10

§ 685.406(b)-(c) .........................................................................4

§ 685.407 ................................................................................4

§ 685.409(c)(3) .........................................................................14

59 Fed. Reg. 61664 (Dec. 1, 1994) ...........................................................7

81 Fed. Reg. 75926 (Nov. 1, 2016) ..........................................................8

87 Fed. Reg. 65904 (Nov. 1, 2022) ...................................................*passim*

## Other Authorities

Frank Chang, Note, *The Administrative Procedure Act's Stay Provision: Bypassing Scylla and Charybdis of Preliminary Injunctions*, 85 Geo. Wash. L. Rev. 1529 (2017) .............................................23

## INTRODUCTION

Career Colleges & Schools of Texas ("CCST") moves this Court to postpone the effective date of the borrower-defense and closed-school provisions of the rule governing student-loan discharges, 87 Fed. Reg. 65904 (Nov. 1, 2022) (the "Rule"), App.337-506; App.141-146 (challenged provisions). *See* 5 U.S.C. § 705; Fed. R. App. P. 8(a)(2).

The Rule represents a striking arrogation of administrative power unauthorized by statute or the Constitution. In Section 455(h) of the Higher Education Act ("HEA"), Congress granted the Department a limited rulemaking power: to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" to loans under the Direct Loan program. 20 U.S.C. § 1087e(h). From that single sentence, the Department issued a sprawling rule that converts defenses into affirmative borrower "claims" that are not subject to limitations periods and proclaims the Department's authority to adjudicate not only borrower claims but also recoupment actions against schools. The Department even declares the power to adjudicate administratively state-law claims, such as breach of contract. These provisions not only exceed the Department's authority but are also unconstitutional. Only Congress can authorize such administrative adjudications. Moreover, state law

1

claims and recoupment actions are not public rights susceptible to administrative adjudication.

The Department compounded this overreach by stacking the deck in favor of borrowers and against schools; the Rule imposes strict liability upon schools for even unintentional erroneous representations or omissions, and then irrationally presumes that *every* borrower in the group would not have attended the school but for the school's act or omission, whatever it is. Although reliance and injury are information possessed by the borrower alone, the Rule denies schools discovery or the opportunity to examine witnesses, which are standard features of administrative adjudication, thus rendering rebuttal of the presumptions practically impossible. And if a borrower defense is proven, the Rule declares that the borrower's entire student debt is discharged, without any proof of what financial harm, if any, actually resulted from the institutional act or omission, and even though Congress granted the Department no rulemaking authority over discharge amounts. The Rule's purported objective is to "streamline" claim approval, without regard to actual proof or statutory or constitutional authority—ultimately leaving schools and taxpayers to foot the bill for the Department's backdoor loan forgiveness program.

CCST members face immediate irreparable injury from the costs of complying with the new and unlawful regulations; from the alteration of business

plans to avoid expanded liability risks; and from immediate subjection to an

unauthorized and unconstitutional adjudicatory forum for both individual and

group claims with procedures that lack due process.

On April 5, 2023, CCST moved for a preliminary injunction staying the

Rule's July 1, 2023 effective date (*see* 87 Fed. Reg. 65904). The district court

granted Defendants the U.S. Department of Education and Secretary Miguel

Cardona (collectively "the Department") a multi-week extension until May 15,

2023, to respond to the motion and held a hearing on May 31, 2023. App.058,

App.060, App.062. On June 27, 2023, CCST moved the district court for a short

administrative injunction pending its ruling on the preliminary-injunction motion.

*See* App.062. With no action by the district court, on the day before the Rule went

into effect, CCST moved this Court for a temporary injunction pending appeal, No.

23-50849, and notified the district court. *Id*. Within 45 minutes of this notice—at

exactly 2:00 P.M. CDT—the district court denied the preliminary injunction, *id*,

and denied the administrative-injunction motion as moot, *id*. Because this denial

came 9 hours before the Rule became effective, seeking relief first with the district

court was impracticable. Fed. R. App. 8(a)(2)(A)(i). This Court granted CCST an

administrative injunction and ordered any renewed motion for injunction to be

filed by July 7, 2023. No. 23-50489, ECF No. 16 (June 30, 2023).

# STATEMENT

The major provisions of the Rule pertinent to this motion are the following:

1.      *Borrower-Defense Claims*. The Rule allows for full discharge of a borrower's student debt based on (among other things) a school's (1) misrepresentation, (2) omission, (3) breach of contract, (4) "aggressive and deceptive" recruitment methods; or (5) on reconsideration, state-law violation. 34 C.F.R. §§ 685.401(b), 685.407.

2.      *Adjudications of Borrower-Defense Claims*. The Rule authorizes the Department to adjudicate individual and group claims. *Id.* §§ 685.402, 685.403. In the latter, each group member is presumed—without the need for individualized proof—to have reasonably been affected by the alleged act or omission in deciding to attend or continue attending the school. *Id.* § 685.406(b)(2). Schools are not afforded discovery or cross-examination rights to rebut this presumption. *See id.* §§ 685.405, 685.406(b)-(c).

3.      *Full Discharge*. Unlike prior regulations compensating borrowers only for financial harm, the Rule fully discharges the *entirety of* a borrower's paid and unpaid debt on a loan if a claim is successful, regardless of the extent of harm—and even if the school's act or omission did not cause the borrowing. *See id*. § 685.401(a)-(b); 87 Fed. Reg. at 65946.

4.     *Closed-School Discharge.* The Rule also expands the definition of a "closed school." The Department automatically discharges the loans of students unable to complete their programs when a school closes. 34 C.F.R. § 685.214(c)(1). Under past regulations, a school closes when its "main campus or any location or branch of the main campus" "ceases to provide educational instruction in all programs." *Id.* § 685.214(a)(2)(i) (2022). The Rule amends this provision to deem a "school" (i.e., any branch or location) to be closed when it has "ceased to provide educational instruction in programs in which most students at the school were enrolled," expanding the field of automatic discharges. *Id.*

5.     *Recoupment Adjudications*. The Rule creates a separate adjudication process through which the Department seeks recoupment of the discharge amount from a borrower's school. *See* 34 C.F.R. § 668.125. The Rule shifts the burden to the school to disprove its liability under the new standards. *Id.* § 668.125(e)(2). Despite this new burden, the Rule provides schools no discovery or witness-examination rights. *See id.* § 668.125(d), (e)(3); *id.* § 668.117(b).

6.     *Limitations Periods.* The Rule eliminates limitations periods on borrower claims, allowing claims to be brought decades after the fact. *See id*. § 685.401(b); 87 Fed. Reg. at 65935.

**STANDARD**

On a motion for injunction pending appeal, a court considers whether an

applicant shows (1) likely success on the merits; (2) threat of irreparable injury; (3)

a favorable balance of the harms; and (4) the public interest. *Whole Woman's

Health v. Jackson*, 13 F.4th 434, 441 (5th Cir. 2021); *First Pentecostal Church of

Holly Springs v. City of Holly Springs*, 959 F.3d 669, 970 (5th Cir. 2020) (granting

temporary injunction).

**ARGUMENT**

I.    **CCST Will Likely Succeed on the Merits**

A.    **The Department lacks authority to adjudicate borrower-defense
      "claims" or recoupment actions.**

The Rule arrogates powers the Department does not have—to create and

then adjudicate borrower claims against the United States and to adjudicate the

Department's own recoupment claims against schools. Section 455(h) of the HEA

requires the Department to "specify in regulations which acts or omissions of an

institution of higher education a borrower may assert *as a defense* to repayment of

a loan." 20 U.S.C. § 1087e(h) (emphasis added). The statute does not authorize the

Department to create or adjudicate affirmative borrower-defense claims or

recoupment claims.

*First*, the plain meaning of "defense" does not encompass an affirmative

"claim." Indeed, at the time of the statute's enactment, the Department required

6

borrower defenses to be asserted in a collection proceeding. *See* 59 Fed. Reg. 61664, 61671 (Dec. 1, 1994).

*Second*, the Department similarly lacks authority to adjudicate claims for money against the United States. Congress must expressly confer the power to adjudicate such actions. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1569 (D.C. Cir. 1987); *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 273-75 (1996). Rulemaking authority does not imply adjudicatory authority. *See RLC Indus. Co. v. CIR*, 58 F.3d 413, 417-18 (9th Cir. 1995). Moreover, Congress must unequivocally waive sovereign immunity, even for administrative adjudication. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992); *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760-61 (2002). Congress granted no such authority here, much less unequivocally. Nor does the Department have authority to adjudicate private state-law rights, like breach of contract. *See Stern v. Marshall*, 564 U.S. 462, 490-91 (2011); *Granfinanciera, S.A., v. Nordberg*, 492 U.S. 33, 51-52 (1989).

*Third*, the Department lacks authority to adjudicate its own recoupment claims against schools. While schools accept financial liability for participation-agreement breaches, 20 U.S.C. § 1087d(a)(3), this provision does not extend to borrower discharges or authorize the Department to adjudicate alleged breaches. The Department has no independent statutory recoupment authority, nor can it rely

7

on asserted common-law rights to recover damages for breach of fiduciary authority. 81 Fed. Reg. at 75931-32. Schools are not agents or fiduciaries of the Department in recruiting students or in most communications, and regardless, Congress cannot "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855). And the Seventh Amendment guarantees a jury trial in common-law actions by the Government. *Jarkesy v. SEC*, 34 F.4th 446, 451 (5th Cir. 2022), *cert granted*, No. 22-859, 2023 WL 4278448 (U.S. June 30, 2023).

*Finally*, under the major-questions doctrine, Congress cannot be deemed "to confer the power the agency has asserted." *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022). Delegations of such extraordinary powers as the Department asserts—cancelling many billions of dollars of student debt, *see* 87 Fed. Reg. at 66007, and shifting existential liability onto thousands of Title IV schools—should not be found in "rarely used" statutory provisions. *See* 142 S. Ct. at 2610-11; 87 Fed. Reg. at 65979 (Section 455(h) "rarely used prior to 2015").

### B. The Rule's borrower defenses, evidentiary presumptions, and full-discharge remedy are unlawful.

Section 455(h) requires the Department to "specify in regulations *which acts or omissions* of an institution of higher education" can be asserted as borrower defenses. 20 U.S.C. § 1087e(h) (emphasis added). The Department must define

acts or omissions with enough specificity for schools to conform their conduct accordingly.

The Rule does not do that. For instance, it newly prohibits "[a]ggressive and deceptive recruitment tactics or conduct," but it does not define that term, listing only non-exclusive examples. *See* 34. C.F.R. § 668.501. Later defining these terms through guidance documents or adjudicatory precedent is not enough—acts or omissions must be set out "*in regulations.*" 20 U.S.C. § 1087e(h) (emphasis added).

*Second*, the Administrative Procedure Act ("APA") requires the Department to reach reasonable and reasonably explained conclusions. *See* 5 U.S.C. § 706(2)(A); *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

The Department did not meet that requirement with respect to the Rule's strict-liability standard for misrepresentations and omissions. Under the Rule, unlike common-law fraud, a borrower can secure a full discharge without showing a school's intent to deceive—or any form of culpability (even negligence). *See* 34 C.F.R. §§ 668.71(c), 668.75. Because the Rule presumes a school's liability for a discharged loan and does not provide for partial discharges, *see* 34 C.F.R. § 668.125(e)(2), § 685.401(a)-(b), this strict-liability standard dramatically increases schools' liability risks.

The Department does not reasonably justify this standard. It claims that "[r]equiring intent would place too great a burden on an individual borrower." 87 Fed. Reg. at 65921. But it did not explain how that burden—which plaintiffs in any common-law fraud action must bear—could rationally outweigh the dramatically increased liability faced by schools whose employees or contractors make innocent mistakes. The Department's second rationale is that, "if the action resulted in detriment to the borrower that warrants relief," knowledge or intent should be irrelevant. *Id.* But that reasoning does not account for the bulk of schools' additional liability risk—group claims, in which injury is presumed, and closed-school claims, in which even minor detriment is presumed to warrant full discharge. *See* 34 C.F.R. §§ 685.401(e), 685.406(b)(2).

*Third*, these presumptions in favor of borrowers in group and closed-school claims are ultra vires, arbitrary and capricious, and violate due process. In group claims, the Rule creates an extraordinary (and unauthorized) "rebuttable presumption that the act or omission giving rise to the borrower defense affected each member of the group in deciding to *attend, or continue attending*, the institution, and that such reliance was reasonable," 34 C.F.R. § 685.406(b)(2) (emphasis added). And "[f]or borrowers who attended a closed school shown to have committed actionable acts or omissions that caused the borrower detriment,

there will be a rebuttable presumption that the detriment suffered warrants relief under this section." *Id.* § 685.401(e).

A presumption is arbitrary and capricious if there is no rational nexus between proven and presumed facts. *See, e.g., Chemical Mfrs. Ass'n v. Dep't of Transp.*, 105 F.3d 702, 703-05 (D.C. Cir. 1997). The fact that a borrower is part of a group claim in which a violation is proven does not make it so probable that each borrower knew about it, reasonably relied on it, and made an attendance decision based upon it that actual proof becomes unnecessary. Nor does the fact that a borrower's school is "closed," under the Rule's new definition, make it more likely that the borrower's detriment warrants a discharge of the full loan amount.

The group-claim procedure targets proprietary schools, who are anticipated to face 75% of group claims, 87 Fed. Reg. at 65993. The Department remarkably has declared that the new standards and group process in tandem will have the "benefit" of driving enrollment away from proprietary schools. *Id*. at 65996. Accordingly, the group-claim procedures arbitrarily deny schools discovery and witness-examination rights in violation of due process, even though evidence concerning a borrower's reliance and injury is solely within the borrower's possession. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*Finally*, the HEA permits automatic discharges when a student "is unable to complete the program in which such student is enrolled due to the *closure* of the

*institution.*" 20 USC § 1087(c)(1) (emphasis added). The Rule considers a school "closed" when it has "ceased to provide educational instruction in programs in which most students at the school were enrolled," 34 C.F.R. § 685.214(a)(2)(i), expanding discharge liability in violation of the statute. *See Closed*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/closed (defining "closed" to mean "not open").

## II.    The Rule Causes Irreparable Harm

"[I]t is not so much the magnitude but the irreparability [of harm] that counts for purposes of a preliminary injunction." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974). Such harm need only "be more than de minimis." *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 600 (5th Cir. 2023) (cleaned up). The district court erred in finding that CCST had demonstrated only speculative or de minimis irreparable injury, and erred in not undertaking the necessary sliding-scale balancing of the preliminary-injunction factors, including the overwhelming showing of likely success on the merits. *State of Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).

12

### A.    Compelled Compliance and Compliance Costs

The Rule creates a strict-liability regime for misrepresentations or omissions in the entirety of speech attributable to a school—by any employee, representative, or contractor—"in connection with the borrower's decision to attend, or to continue attending, the institution or the borrower's decision to take out a covered loan." 34 C.F.R. §§ 668.71, 668.75, 685.401(b)(1),(2). It details new proscriptions relating to speech regarding educational programming, financial charges and assistance, and the employability of graduates. *Id.* §§ 668.72-668.74. And the Rule sets out brand new recruiting regulations. *Id.* §§ 668.500-668.501. The unlawful Rule, which threatens potentially massive liability for noncompliance, burdens the schools' constitutionally protected non-fraudulent speech. *See Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1236 (10th Cir. 2005).

Furthermore, "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs," given sovereign immunity. *Rest L. Ctr.*, 66 F.4th at 597 (cleaned up); *Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021). As described below, CCST provided evidence of present and ongoing compliance costs extending beyond the July 1 effective date.

***Recordkeeping.*** Given the Rule's breadth and lack of a limitations period, *supra* 7, schools incur compliance costs defensively to record and preserve a much

broader set of communications and for a longer time. *See* App.004-006, App.016-017, App.027-028, App.036-037, App.040, App.045-047. The increased six-year limitations period on recoupment actions is subject to exceptions, 34 C.F.R. § 685.409(c)(3), and a school may be called on to defend its reputation—and the value of its alumni's credentials—in a borrower-defense adjudication concerning much older loans. Accordingly, schools must prepare to defend against allegations that look back decades. *See* App.005, App.040, App.045; App.214. Defensive recordkeeping to defend against potential enforcement of a new regulation is irreparable harm. *See Rest. L. Ctr.*, 66 F.4th at 598-99.

*Training.* Schools must also train and hire staff to meet this additional recordkeeping burden. They must also train staff on the Rule's strict-liability prohibitions on misrepresentation and omissions, as well as the new prohibition on "aggressive and deceptive" recruiting. *See* App.026-027, App.036-038; App.004-006; App.016-017. ECPI, for example, has over 255 employees who will be "constantly trained" on the new regulations. App.005-006.

*Monitoring.* Schools must immediately and continuously vet communications and practices to ensure compliance. As a school CEO testified, "our people have to be aware of exactly what they are doing and saying to students," and "be aware of every communication." App.026-027. Given the staggering risks of liability, the school is "[i]mplementing and dramatically

14

expanding systems that monitor representations made by hundreds of staff both in recruiting processes and to our tens of thousands of students, including verbal and digital communications, including engaging in extensive legal reviews of the monitored content," and "[e]nsuring a considered and thorough legal review of proposed communications, documents, and scripts." App.005. Lincoln Tech is similarly "reviewing every marketing and advertising material" to avoid strict liability under the Rule. App.017. Monitoring of *all* covered communications is a substantial burden under the Rule.

The district court disregarded the law and the evidence in finding that these costs did not constitute irreparable injury.

*First*, it is wrong that "most of the costs described by CCST and its members have already been incurred" and thus "cannot form the basis for injunctive relief." *See* App.527. Ongoing compliance burdens and costs are classic irreparable harms, even if conscientious parties begin to incur them before a regulation goes into effect. The district court's apparent premise that all relevant harms must be shown to "arise starting on July 1" and be "entirely forward-looking," App.527-528, is legal error. *See Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) ("To seek injunctive relief, the plaintiff must show a real and immediate threat of future *or continuing* injury apart from any past injury." (emphasis added).

To the extent the district court simply did not consider the evidence that already-incurred costs were likely to continue, its decision would warrant reversal on that ground alone. *See Rest. L. Ctr.*, 66 F.4th at 600 (district court abused its discretion by not considering evidence of irreparable harm). That evidence was substantial. For example, in a passage quoted by the district court, CCST's chairperson attested that "both CCST and its member schools have already expended *and continue to expend* significant resources in anticipation of the Final Rule's effective date." App.212 (emphasis added); *see* App.527. Similarly, "ECPI has already undertaken *and continues to undertake* significant efforts to comply with the Rule's requirements," App.004-005 (emphasis added); that "staff members are being *and will need to be constantly* trained," App.006 (emphasis added), and that "the costs and burdens . . . associated with the aforementioned activities *will only increase further* with incredible urgency if the Final Rule is permitted to go into effect," App.006 (emphasis added). The district court did not question the credibility of any of this evidence, which is uncontradicted. The court's failure to consider it was an abuse of discretion. *See Rest. L. Ctr.*, 66 F.4th at 600.

Moreover, certain compliance activities and costs—keeping records of post-July 1, 2023 communications subject to the Rule and vetting them for compliance—necessarily occur in the future.  And there was testimony that ECPI

San Antonio plans to hire an additional compliance officer *after* July 1, 2023. App.037. A preliminary injunction would protect schools against prospective irreparable injury.

*Second*, the district court erred in finding that CCST had failed to show "more than an unfounded fear" of "more than de minimis" compliance costs and burdens. App.526 (citation and internal quotation marks omitted). Specifically, the court faulted CCST for not asserting these harms with the requisite specificity—in particular, for not "attempting to quantify them or tie them to specific requirements within the Rule." App.529.

To start, the district court committed legal error by concluding that CCST should have quantified its harms. *See Rest. L. Ctr.*, 66 F.4th at 600 ("Nor does it matter that Plaintiffs did not convert each allegation of harm into a specific dollar amount. Our precedent requires only that alleged compliance costs must be 'more than de minimis.' Stringently insisting on a precise dollar figure reflects an exactitude our law does not require."); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (the fact that an asserted harm "could not be quantified" *supported* a finding of irreparability).

Moreover, the record contains detailed descriptions of current and future compliance costs and how they relate to the Rule. For example, Mark Dreyfus, ECPI's President, testified that ECPI is spending "two to three times" as much

time on compliance training for about 60 university staff as a result of the Rule's

new standards and limitations periods. App.038. He also testified that ECPI plans

to hire more staff in Texas as a result of the Rule after it goes into effect. App.036-

037. CCST's chairperson estimated that CCST had spent 300 staff hours

addressing the Rule's new requirements, that this diversion of resources was

ongoing, and that it would need to hire a third-party training organization. *See*

App.214-215. And Scott Shaw, President and CEO of Lincoln Tech, described the

specific efforts his schools have undertaken to respond to specific requirements of

the Rule:

> counseling Lincoln Tech's schools and staff on the Rule's
> requirements; reviewing every marketing and advertising
> material and training recruitment and admissions staff on
> account of the regulations' imposition of strict liability
> against schools; dedicating or allocating staff and
> resources to handle the anticipated flood of meritless
> borrower defense claims that will be submitted following
> the effective date and as a result of the lowered threshold
> for claim approval; and developing and upgrading
> recordkeeping systems to maintain student records for
> perpetuity, on account of the fact that there is no statut[e]
> of limitations to borrower defense claims.

App-033-034; *see* App.527-528 (citing this).  The district court's suggestion that

all the aforementioned evidence lacked specificity, App.530, is unfounded.

These descriptions are comparable to the evidence found to be sufficient in

*Restaurant Law Center*, where plaintiffs described the additional staff time

necessitated by a new regulation ("at least 8 hours a week" or "at least 10 hours")

and "the need to 'hire additional managers to perform ongoing monitoring.'" 66
F.4th at 599 (quoting plaintiff's evidence). Nor could CCST's asserted harms
reasonably be viewed as "unfounded fear[s]," App.530, considering (as the district
court found) that many have already begun to materialize. *See* App.527. These
concrete activities are not speculative; no rational school could fail to undertake
expanded training, monitoring, and recordkeeping in the face of the Rule. Like in
*Restaurant Law Center*, it was an abuse of discretion for the district court here to
conclude that the evidence CCST adduced—the credibility of which the court did
not question—failed to establish a likelihood of more than de minimis harm.

### B.    Change in Conduct to Avoid Risk of Closed-School Liability

The Rule's dramatic expansion of closed-school discharge liability has
already required at least one Participating School to abandon plans to consolidate
campuses in Virginia, even though doing so would benefit students of the school
and conserve resources. *See* App.027-039.

Contrary to the district court's analysis, this is evidence of "specific plans"
that were abandoned. App.525. The district court relied on testimony that ECPI
abandoned the plans for a Dallas campus to conserve funds for recoupment
liability, but the *in terrorem* effect of the Rule is evidence of irreparable injury, not
evidence against it. The district court found it speculative that going ahead with the
Dallas campus would have resulted in closed-school liability, but that is not the

point. The closed-school discharge rule is so amorphous and easy to satisfy that schools cannot take the risk of opening and closing campuses, and therefore alter their conduct accordingly.

### C.     Threat of Unlawful Adjudications

Participating Schools face an imminent threat of borrower-defense claims and recoupment actions in an unlawful forum. The district court discounted this point because CCST has not identified any particular claims, and it is speculative that such claims would be decided against a CCST member and result in financial liability.  App.522-523.

The court's reasoning is untenable. Schools do not know of borrower claims until the Department informs them, which the Department has not done. App.034. But there is no doubt such claims will (and have already) come. Even before the Rule, 206,000 borrower-defense claims against approximately 4,000 schools were filed after the bar to discharge was lowered in the *Sweet v. Cardona* settlement, App.234—including (to a virtual statistical certainty) at least one CCST member school.[1] Most if not all of these claims are still pending and will be subject to the

---

[1] Because this is about 65 percent of the 6,200 Title IV participants, *see* U.S. Dep't of Educ., 2023-24 Federal School Code List of Participating Schools (November 2022), https://fsapartners.ed.gov/knowledgecenter/library/federal-school-code-lists/2022-10-31/2023-24-federal-school-code-listparticipating-schools-november-2022, the probability that at least one of CCST's 54 Participating Schools is among these 4,000 schools is about 99.9999 percent, or $(1 - (1-0.645)^{54})$.

recoupment procedures under the Rule. Schools will be forced to participate in the borrower-defense proceeding and provide a response within 90 days in order to preserve their reputations and avoid presumptive liability in a later recoupment proceeding. *See* App.033-034; 34 C.F.R. § 685.405 (requiring schools to participate in borrower defense proceedings at pain of forfeiting defense to the claim); *id.* 668.125(e)(2) (requiring schools to disprove that a discharge was proper).

CCST is not resting its claim of irreparable injury solely on any financial liability from these adjudications, but also on members' subjection to these proceedings. Agency adjudication of borrower-defense or recoupment claims before the Department is unlawful, and violation of a litigant's "independent right to adjudication in a constitutionally proper forum" is injury, *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 579 (1985), that by definition is irreparable. *See also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542-43 (5th Cir. 2008) (violation of procedural rights is irreparable injury). Schools will be immediately forced to defend borrower claims. *See* 34 C.F.R. § 405. Furthermore, in bracing for the volume of likely borrower-defense claims—and the significant liability that could follow—Participating Schools will need to conserve and divert resources in order to adhere to the Department's financial-responsibility regulations. *See* App.049, App.051-052; 34 C.F.R. § 668.171-75; 20 U.S.C. § 1099c(c).

## III.    The Balance of Harms Favors Postponement

The Department has not explained how maintaining the status quo would cause it any harm, especially for the short period of an injunction pending appeal. *See* App.283. Nor has the Department identified why it could not achieve the Rule's putative benefits after this case concludes, should it ultimately prevail. *See Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011).

## IV.    The Public Interest Favors Postponement

Enjoining the Rule pending appeal would favor the public interest by avoiding harms to students, both through fewer resources being available for programs or through necessary increases in tuition, or by reputational injury. *See* App.051-052. And should a Participating School be put to the "Hobson's choice" of enduring the Rule's requirements or leaving Title IV, the interests of current students—many of whom benefit from the Direct Loan Program and may have difficulty accessing private financing—"would be seriously compromised." *See United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983) (similar with respect to a hospital's choice whether to give up Medicare and Medicaid funding).

## V.    Postponement Should Not Be Party-Restricted

Although CCST in form moves for an injunction pending appeal because the case arises from district court, *see* Fed. R. App. 8(a)(2), it invokes this Court's

statutory authority "to issue all necessary and appropriate process to postpone the effective date of an agency action" pending review. 5 U.S.C. § 705. A stay of an agency order's effective date differs from a typical injunction because it acts on the agency order, not on the party; whereas an injunction "directs the conduct of a party, and does so with the backing of its full coercive powers," a stay "postpone[s] some portion of the proceeding" or "temporarily divest[s] an order of enforceability" while review proceeds. *Nken v. Holder*, 556 U.S. 418, 428 (2009); *Alliance for Hippocratic Medicine v. FDA*, No. 23-10362, 2023 WL 2913725, at \*4 (5th Cir. Apr. 12, 2023) (declining in part to stay nationwide postponement of effective date of FDA ruling under § 705). "An APA stay issued under § 705 presumably has automatic, nationwide applicability," and does not create conflicting obligations like a nationwide injunction. Frank Chang, Note, *The Administrative Procedure Act's Stay Provision: Bypassing Scylla and Charybdis of Preliminary Injunctions*, 85 Geo. Wash. L. Rev. 1529, 1549-51 (2017). The Supreme Court did not limit its stay of the Clean Power Plan to the plaintiff in *West Virginia v. EPA*, 577 U.S. 1126 (2016), nor did this Court so limit the stay of OSHA's vaccine mandate, *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604 (5th Cir. 2021); *see also In re EPA*, 803 F.3d 804 (6th Cir. 2015) (nationwide stay of Clean Water Rule), *vacated after decision by In re United States Department of Defense*, 713 F. App'x 489 (6th Cir. 2018). The Rule's flaws invalidate it as to all Title IV

participants, who suffer irreparable injuries comparable to CCST members' injuries; furthermore, the APA mandates that if CCST ultimately prevails the district court "shall set aside" the Rule, without a permanent injunction requiring proof of the plaintiff's irreparable injury. 5 U.S.C. § 706; *Texas v. United States*, 40 F.4th 205, 219-220 (5th Cir. 2022) (distinguishing vacatur from injunction). The Department cannot protest nationwide relief when it gives the Rule nationwide effect. *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 388 (5th Cir. 2023) (en banc). It would be chaotic and contrary to the APA if every affected entity had to bring its own action or be represented in a class action for an agency rule's effective date to be postponed pending review.

## CONCLUSION

This Court should stay the Rule's effective date.

Dated:  July 7, 2023

Respectfully submitted,

 */s/ Allyson B. Baker*

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

Allyson B. Baker
Stephen Kinnaird
Michael Murray
Sameer P. Sheikh
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202)-551-1700

*Counsel for Plaintiff-Appellant*

24

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on July 7, 2023, I filed foregoing motion via the Court's CM/ECF system and also

caused the foregoing to be served by email on the following counsel for

Defendants-Appellees:

Christine L. Coogle (christine.l.coogle@usdoj.gov)
Cody T. Knapp (cody.t.knapp@usdoj.gov)
R. Charlie Merritt (robert.c.merritt@usdoj.gov)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005

Jennifer L. Utrecht (jennifer.l.utrecht@usdoj.gov)
U.S. Department of Justice
Civil Division
Appellate Staff
950 Pennsylvania Ave. NW
Room 7710
Washington, D.C. 20530

*/s/ Allyson B. Baker*

Allyson B. Baker
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 6, 2023, Allyson Baker, counsel for Plaintiff-Appellant, conferred by telephone with Cody Knapp, counsel for Defendants-Appellees, about the foregoing motion. Defendants oppose the relief requested in this motion.

*/s/ Allyson B. Baker*
Allyson B. Baker
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,199 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13.

*/s/ Allyson B. Baker*
Allyson B. Baker
*Attorney for Plaintiff-Appellant*

Dated: July 7, 2023