No. 23-50491

# In the United States Court of Appeals for the Fifth Circuit

―――――――――

Career Colleges & Schools of Texas,

*Plaintiff-Appellant,*

v.

United States Department of Education, et al.,

*Defendants-Appellees.*

―――――――――

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:23-cv-00433-RP

―――――――――

**PLAINTIFF-APPELLANT'S REPLY BRIEF IN SUPPORT OF ITS OPPOSED MOTION FOR INJUNCTION PENDING APPEAL**

―――――――――

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

Allyson B. Baker
Stephen B. Kinnaird
Michael Murray
Sameer P. Sheikh
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202) 551-1700

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

Introduction ........................................................................................................1
Argument ...........................................................................................................1
   I.   CCST Will Likely Succeed on the Merits ...................................................1
   II.  The Rule Causes Irreparable Harm ...........................................................6
   III. Postponement Should Not Be Party-Restricted ......................................11
Conclusion .......................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aransas Project v. Shaw*,
  775 F.3d 641 (5th Cir. 2014) ...................................................................................7

*Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*,
  516 U.S. 264 (1996) ................................................................................................2

*BST Holdings, L.L.C. v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) .................................................................................11

*Chauffeur's Training School, Inc. v. Spellings*,
  478 F.3d 117 (2d Cir. 2007), ...................................................................................4

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019) ............................................................................................8

*Edelman v. Jordan*,
  415 U.S. 651 (1974) ................................................................................................4

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  59 U.S. 272 (1855) ..................................................................................................2

*Nigmadzhanov v. Mueller*,
  550 F. Supp. 2d 540 (S.D.N.Y. 2008) .....................................................................3

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
  66 F.4th 593 (5th Cir. 2023) ................................................................................8, 9

*RLC Indus. Co. v. Comm'r*,
  58 F.3d 413 (9th Cir. 1995) .................................................................................2, 8

*United States v. Nordic Village, Inc.*,
  503 U.S. 30 (1992) ..................................................................................................3

*Vara v. DeVos*,
  No. 19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25, 2020) .......................3

*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022) ............................................................................................2

**Statutes**

5 U.S.C.

    § 705 ............................................................................................................. 11
    § 706 ............................................................................................................. 11

15 U.S.C.

    § 1666i(b) ....................................................................................................... 2
    § 1641(d)(1) ................................................................................................... 2

20 U.S.C.

    § 1087(c) ........................................................................................................ 6
    § 1087d(a)(3) ................................................................................................. 4
    § 1087e(h) ...................................................................................................... 1
    § 1094(c) ........................................................................................................ 4
    § 1099c(c) ...................................................................................................... 9

28 U.S.C.

    § 1346(a)(2) ................................................................................................... 2
    § 1491(a)(1) ................................................................................................... 2

Higher Education Act ............................................................................................ *passim*

**Regulations**

34 C.F.R.

    § 668.72(f) ...................................................................................................... 5
    § 668.72(p) ..................................................................................................... 5
    § 668.125(e)(2) ............................................................................................ 10
    § 668.171-75 ................................................................................................. 9
    § 685.206(e) .................................................................................................. 7
    § 685.214(a)(2)(i) .......................................................................................... 6
    § 685.402(a) .................................................................................................. 8
    § 685.402(c) ................................................................................................ 10
    § 685.405(d) ................................................................................................ 10

87 Fed. Reg. 65904 (Nov. 1, 2022) ........................................................................ *passim*

**Other Authorities**

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev.
    1121, 1129-85 (2020) ........................................................................................11

11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d
    ed., Apr. 2023 update) .....................................................................................11

# INTRODUCTION

CCST has demonstrated that this Court should postpone the effective date of the challenged provisions of the Rule,[1] and the Department's arguments in opposition lack force.

# ARGUMENT

## I. CCST Will Likely Succeed on the Merits

The Department only selectively engages (and fails to refute) CCST's showing of likely success on the merits.

**A. Claim Adjudication.** The Department disregards the text of section 455(h) of the Higher Education Act ("HEA"), which provides that "the Secretary shall specify in regulations *which acts or omissions* of an institution of higher education a borrower may *assert as a defense* to repayment of a loan." 20 U.S.C. § 1087e(h) (emphasis added). The statute says nothing about claims (the polar opposite of defenses), much less the power to adjudicate claims. The Department argues that a defense exists whether or not the borrower actively repays her loan, Opp. 14-15, but that is irrelevant. Like any contracting party, the borrower may stop performance and litigate the defense in the appropriate tribunal, as the

---

[1] Institutional Eligibility Under the Higher Education Act of 1965, 87 Fed. Reg. 65904 (Nov. 1, 2022) ("the Rule").

1

Department required borrowers to do in its initial rulemaking. Mot. 6-7. Congress commonly distinguishes between the assertion of claims and defenses. *E.g.*, 15 U.S.C. §§ 1641(d)(1), 1666i(b).

Even if section 455(h) authorizes borrower "claims," it does not authorize the Department to adjudicate them. Borrowers have judicial remedies for "any claim against the United States founded . . . upon . . . any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see also id.* § 1346(a)(2); *cf.* 87 Fed. Reg. at 65923 ("the Department is the party against which borrowers assert a defense to repayment"). The Department ignores established principles that (1) "[a]gencies have only those powers given to them by Congress," *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022); (2) conferral of adjudicatory power must be express, Mot. 7; and (3) rulemaking authority does not imply adjudicatory authority, *RLC Indus. Co. v. Comm'r*, 58 F.3d 413, 417-18 (9th Cir. 1995); *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 273 (1996) (denying adjudicatory power where statute did not authorize agency "to function as both regulator and adjudicator"). These precedents are not limited to adjudicating claims between private parties, Opp. 16. *See RLC*, 58 F.3d at 417-18. Even where public rights are involved, it is Congress's prerogative alone to assign adjudicatory authority to judicial or executive fora, "as it may deem proper." *Murray's Lessee v. Hoboken*

*Land & Improvement Co.*, 59 U.S. 272, 284 (1855). Finally, the Department does not even defend its unconstitutional arrogation of power to adjudicate state-law rights. Mot. 6.

The Department relies, Opp. 16-17, on an unpublished district court decision finding that the HEA "require[s] the Secretary to adjudicate borrower defense claims." *Vara v. DeVos*, No. 19-12175-LTS, 2020 WL 3489679, at *2 (D. Mass. June 25, 2020). *Vara* is unpersuasive. It draws an inapposite analogy to cases holding that immigration officials have a duty to adjudicate immigration applications. But Congress made an "explicit delegation of the power" to process immigration applications to the agency, and the courts simply rejected the proposition that adjudication was not required if the granting of relief was discretionary. *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (cited in *Vara*, 2020 WL 3489679, at *3).

Independently, Congress must unequivocally waive sovereign immunity, and it did not do so in section 455(h). Mot. 7. The Department oddly rejoins that loan discharges are not damages, Opp. 16, but sovereign immunity applies, absent waiver, to *any* claim against the United States, not just damages claims. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34-35 (1992). Moreover, the Department has characterized discharges as equivalent to "remedies like rescission, avoidance, restitution, and certain forms of out-of-pocket or reliance costs," 87

3

Fed. Reg. at 65914, which are subject to sovereign immunity, *Edelman v. Jordan*, 415 U.S. 651, 668-69 (1974).

**B. Recoupment Adjudication.** Participating schools accept financial liability for breaching its participation agreement, 20 U.S.C. § 1087d(a)(3), but no statute authorizes the Department to create or adjudicate *its own liability claims*, in derogation of schools' jury-trial rights. Mot. 7-8. The Department can enforce participation agreements in court.

The Department points to *Chauffeur's Training School, Inc. v. Spellings*, 478 F.3d 117 (2d Cir. 2007), Opp. 17, but that case does not support conducting recoupment adjudications without statutory authorization. There, because a statute (20 U.S.C. § 1094(c)) authorized hearings for terminations, suspensions, and fines, the Second Circuit held that "it would be unreasonable to view the specification of remedies set forth in § 1094(c)" as excluding relief to recover guarantee payments. 478 F.3d at 127. The analysis is wrong. But, significantly, the Department here is not grafting additional remedies onto an *authorized* statutory proceeding; indeed, for recoupment, the Department denies institutions hearings under Subpart G of Part 668, which implements § 1094(c). *See* 87 Fed. Reg. at 65949. *Chauffeur's* does not support the Department's wholesale creation of a novel adjudication scheme untethered to any authorized statutory hearing.

**C. Substantive Challenges.** The Department mounts no defense to CCST's challenges to the Rule's substantive provisions. CCST has not expressed mere policy disagreement, Opp. 18-19; rather, CCST challenges the Rule's arbitrary internal contradictions. The Rule imposes strict liability on schools for even inadvertent errors in the name of remedying borrower injury, and then irrationally relieves the borrower of any requirement to prove injury in most circumstances. It discharges (and shifts to the school) the borrower's *entire student debt* without requiring any proof that the school's act or omission wrongfully caused the borrower to amass that debt. Mot. 8-10.

The Department does not even address CCST's challenge to the outlandish group-claim presumption. For every error—even potentially picayune ones like incorrect information about books or supplies, 34 C.F.R. § 668.72(f), or the existence of contracts with specific externship sites, *id.* § 668.72(p)—the Department presumes that every borrower, no matter the circumstances, knew about it, reasonably relied on it, and would not have attended or continued attending the school but for it. There is no nexus between proven and presumed facts, and thus the presumption is not only unauthorized by statute but also arbitrary and capricious. Mot. 10-11. The Department trumpets its supposed "experience" without explanation, Opp. 19, but it has no experience adjudicating the new prohibitions. And the Department does not contest that information about

5

reliance and injury is virtually always solely in the borrower's possession, or that it is practically impossible for schools to rebut the presumptions under the Department's slanted borrower-defense and recoupment procedures. Mot. 11.

CCST does not misunderstand the closed-school rule, Opp. 19-20. The rule improperly treats a closed school as such even when it is still open, thus expanding automatic-discharge liability. Mot. 11-12. The Rule does not merely address the evasion tactic of keeping "a single, small program open," Opp. 20; it defines closure to occur when the school is still open but has merely ceased "instruction in programs in which most students at the school were enrolled," 34 C.F.R. § 685.214(a)(2)(i), (*i.e.*, >50%). This contravenes 20 U.S.C. § 1087(c).

## II.   The Rule Causes Irreparable Harm

Like the district court, the Department does not question the accuracy or credibility of CCST's evidence of irreparable harm, only its legal sufficiency. And like the district court, the Department is wrong on the law.

**A. Compliance Burdens and Costs.**  The Rule burdens speech and causes irreparable compliance costs. Mot. 13. The Department repeats but cannot defend the district court's erroneous conclusion that compliance costs do not count if they have already been incurred. It is uncontested that CCST schools will continue to incur such costs. Mot. 15-17. And it is well-established that a "threat of future *or*

*continuing* injury" constitutes irreparable harm. *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (emphasis added).

Like the district court, the Department ignores the concrete evidence of future costs, including ECPI's plan to hire more staff after the Rule goes into effect, Mot. 16-17; App.037. And other substantial and undisputed costs—such as monitoring and recording *all* communications made after the Rule's new speech restrictions go into effect—necessarily occur in the future. Mot. 16.

Instead, the Department argues that additional costs might be de minimis. But the uncontested evidence reveals significant staff time spent on training, monitoring, recordkeeping, and other actions necessitated by the Rule. *See* Mot. 17-18. This is not the same training that was routine before the Rule was announced, Opp. 11. The Rule sets forth several new requirements, Mot. 13, and "ECPI has expended significant time and effort preparing and training staff to comply," App.005—"two to three times" as much as before, App.038:8-13; *see also* App.016-017 (Lincoln Tech).

Schools predictably invest more in compliance when faced with a strict-liability regime that will induce large numbers of claims vis-à-vis the prior rule, which only discharged loans for knowing misrepresentations and only to the extent of proven financial harm. *See* 34 C.F.R. § 685.206(e); App.016-19, 26-29, 34-35, 38-39. Further, ECPI's plan to hire an additional employee after the Rule's

effective date, App.037:3-9—ignored by both the district court and the Department—constitutes future irreparable harm that is not de minimis. *See Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 600 (5th Cir. 2023).

The Department runs headlong into *Restaurant Law Center*. There, additional staff time of 8 or 10 hours a week for defensive recordkeeping and compliance monitoring showed irreparable harm. 66 F.4th at 598-99. So did "the need to 'hire additional managers to perform ongoing monitoring.'" *Id.* at 599 (quoting plaintiff's evidence). It did not matter that these activities were not expressly required by the rule, Opp. 11, so long as they are necessary to protect the employer and defend against claims. 66 F.4th at 598-99. Nor did the plaintiff have to prove the certainty of future investigations or lawsuits, Opp. 11, so long as the additional burdens were logical, predictable responses to the new regulations. *See* 66 F.4th at 598-99; *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019). Indeed, an admitted object of the Department's draconian borrower-defense and group-claim rules is "the promotion of compliance by . . . institution[s]," 34 C.F.R. § 685.402(a), and inducing institutions to "change their practices," 87 Fed. Reg. at 65908, 65995, which requires compliance programs.

The Department attempts to distinguish *Restaurant Law Center* on the basis that the Department of Labor there acknowledged restaurants' asserted compliance costs. Opp. 12. But agency acknowledgement is irrelevant. Irreparable harm is a

8

question for the Court, not the agency, and it was proven here by uncontradicted evidence. Relief is justified to spare CCST members these irreparable costs during the appeal's pendency.

**B. Change in Conduct.** At least one CCST member, ECPI, scrapped plans to open a campus in Dallas, Texas, because of the expanded liability risks posed by the Rule and the need to preserve funds for recoupment. App.027:12-28:13. ECPI, which is a single nationwide entity, App.050:17, has also had to continue maintaining a Virginia location because of the closed-school discharge provision. App.029:4-33:18. ECPI's abandonment of its Texas plans, in order to preserve assets for defending and paying recoupment claims, is a concrete, irreparable injury caused by the Rule, whether it comes from the borrower-defense or closed-discharge provisions. And CCST members are deterred from opening and closing new locations because of the latter, which is likewise irreparable injury. App.006-08, 16.

The Department misses the point in asserting that actual liability is many steps down the road. The threat of abandoned plans is not "remote," Opp. 13 (quoting App.526)—it has already materialized, and its harms are ongoing. Avoiding investment and growth opportunities is the logical and predictable result of the Rule's dramatic expansion of liability risk, especially in light of the Department's financial-responsibility regulations. *See* Mot. 21; App.049, 51-52; 34

9

C.F.R. § 668.171-75; 20 U.S.C. § 1099c(c). Harms that logically and irreparably result from government action justify interim relief. *See Rest. L. Ctr.*, 66 F.4th at 598. It also is inconsistent for the Department to defend the Rule on the merits as simply announcing standards for conduct while simultaneously arguing that there is no irreparable harm because any change in conduct is speculative.

**C. Threat of Unlawful Adjudications.** The Department ironically faults CCST for not identifying specific claims against members, Opp. 13, when the Department has not disclosed any. It is a virtual certainty that the approximately 205,000 recent claims against 4,000 schools, App.234, include claims against CCST members, Mot. 20 & n.1, and the Department would have said so if it were otherwise. These claims will be subject to the Rule's new procedures. New claims will also abound under the Rule's strict-liability regime, which promises full debt relief for borrowers, including via group claims initiated by third-parties. *See* 34 C.F.R.§ 685.402(c).

Irreparable injury occurs before liability. Schools have no choice but to participate in the borrower-defense proceedings; otherwise, they forfeit their defense. *See* 34 C.F.R. § 685.405(d). Schools must then *disprove* the correctness of the discharge decision in a recoupment proceeding. *Id.* § 668.125(e)(2). Schools will immediately suffer irreparable injury from the costs of responding, which the Department estimated to be $17,611.02 per response on average, based on 378 staff

hours and $46.59 per hour. *See* 87 Fed. Reg. at 66030. Schools will also suffer irreparable reputational injury. App.009, 18.

These inevitable adjudications also violate due process and schools' rights not to be subject to an unconstitutional forum. *See* Mot. 2-3, 8, 10-11, 21. Denial of constitutional rights "for even minimal periods of time" is per-se irreparable harm. *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021); *accord* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed., Apr. 2023 update).

CCST clearly met its burden to show irreparable harm, and the equities favor a stay.

### III. Postponement Should Not Be Party-Restricted

The Department inveighs against nationwide injunctions, Opp. 20-21, but fails to address CCST's showing that effective-date postponement under 5 U.S.C. § 705 operates as a stay of the Rule and not as an injunction on a party's future acts. Mot. 23-24. Ultimate relief under the APA is vacatur, not injunction, 5 U.S.C. § 706; Mot. 24, and vacatur eliminates an unlawful rule for everyone, *see* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1129-85 (2020). Preliminary relief under § 705 should match ultimate relief under § 706 in scope. It would be absurd if, when relief under § 705 is warranted, every property owner aggrieved by a wetlands regulation; every small business or worker aggrieved by

11

an OSHA regulation; or every veteran aggrieved by a benefits regulation would have to seek the same temporary relief from unlawful rules in individual or representative actions, each with potentially different effective dates. The Department's contrary position undermines judicial review of administrative action.

## CONCLUSION

This Court should stay the Rule's effective date.

Dated:  July 14, 2023

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

Respectfully submitted,

  /s/ Allyson B. Baker

Allyson B. Baker
Stephen Kinnaird
Michael Murray
Sameer P. Sheikh
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202) 551-1700

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that on July 14, 2023, I caused the foregoing to be filed via the Court's CM/ECF system and served by email on the following counsel for Defendants-Appellees:

Christine L. Coogle (christine.l.coogle@usdoj.gov)
Cody T. Knapp (cody.t.knapp@usdoj.gov)
R. Charlie Merritt (robert.c.merritt@usdoj.gov)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005

Jennifer L. Utrecht (jennifer.l.utrecht@usdoj.gov)
U.S. Department of Justice
Civil Division
Appellate Staff
950 Pennsylvania Ave. NW
Room 7710
Washington, D.C. 20530

>  /s/ Allyson B. Baker
>  Allyson B. Baker
>  *Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(C) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 2,499 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13.

*/s/ Allyson B. Baker*
Allyson B. Baker
*Attorney for Plaintiff-Appellant*

Dated: July 14, 2023