No. 23-50491

# In the United States Court of Appeals for the Fifth Circuit

_____

Career Colleges and Schools of Texas,

*Plaintiff-Appellant,*

v.

United States Department of Education;
Miguel Cardona, Secretary, U.S. Department of Education,
in his official capacity as the Secretary of Education,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:23-cv-00433-RP

_____

## APPELLANT'S RESPONSE TO PETITION FOR REHEARING EN BANC

_____

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

Stephen B. Kinnaird
Allyson B. Baker
Michael Murray
Sameer P. Sheikh
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202) 551-1700

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Introduction ........................................................................................... 1

Argument ................................................................................................ 3

    I.    The panel's unanimous assessment of CCST's likelihood of
         success does not merit en banc review. ................................ 3

        A.    Section 455(h) does not empower the Department to
             authorize borrower "claims" against the United States. ............ 3

        B.    The Department lacks statutory authority to adjudicate
             borrower-defense claims. ............................................. 6

        C.    The Department lacks statutory authority to adjudicate
             recoupment claims. .................................................... 9

        D.    The other panel assessments challenged by the
             Department are neither erroneous nor exceptionally
             important. ............................................................. 10

    II.    The panel granted appropriate relief. ................................ 12

Conclusion ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*,
  516 U.S. 264 (1996).................................................................................7

*Calvillo Manriquez v. Devos*,
  345 F.Supp.3d 1077 (N.D. Cal. 2018)...................................................8

*Chamber of Com. v. Dep't of Lab.*,
  885 F.3d 360 (5th Cir. 2018) ..................................................................4

*Chauffeur's Training School, Inc. v. Spellings*,
  478 F.3d 117 (2d Cir. 2007) ....................................................................9

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
  535 U.S. 743 (2002).................................................................................5

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir.), *judgment vacated as moot*, 144 S.Ct. 480
  (2023).......................................................................................................17

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989)...................................................................................8

*Lucio v. Lumpkin*,
  987 F.3d 451 (5th Cir. 2021) .................................................................15

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  59 U.S. 272 (1855)...................................................................................7

*N. Star Alaska v. United States*,
  9 F.3d 1430 (9th Cir. 1993) (en banc) ...................................................5

*Nigmadzhanov v. Mueller*,
  550 F.Supp.2d 540 (S.D.N.Y. 2008) .......................................................8

*RLC Indus. Co. v. Comm'r*,
  58 F.3d 413 (9th Cir. 1995) .....................................................................7

*Sierra Club v. Morton,*
　405 U.S. 727 (1972)................................................................16

*Stern v. Marshall,*
　564 U.S. 462 (2011)..................................................................8

*Sweet v. Cardona,*
　641 F.Supp.3d 814 (N.D. Cal. 2022).......................................8, 14

*Texas v. EPA,*
　829 F.3d 405 (5th Cir. 2016) ...................................................13

*Texas v. United States,*
　809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court,*
　579 U.S. 547 (2016).................................................................15

*United States v. Nordic Village, Inc.,*
　503 U.S. 30 (1992)....................................................................5

*Vara v. DeVos,*
　No. CV-19-12175-LTS, 2020 WL 3489679 (D. Mass. June 25,
　2020) .......................................................................................8

*West Virginia v. EPA,*
　597 U.S. 697 (2022)................................................................6, 7

**Constitution**

U.S. Const. art. III .......................................................................8

U.S. Const. amend. VII ...............................................................8

**Statutes**

5 U.S.C. § 705.........................................................................15, 16

5 U.S.C. § 706(2) ......................................................................16

20 U.S.C. § 1087(c)(1)................................................................11

20 U.S.C. § 1087d(a)(3)...............................................................9

20 U.S.C. § 1087e(h) ...........................................................*passim*

20 U.S.C. § 1094 ...................................................................................9

20 U.S.C. § 1095a .................................................................................7

20 U.S.C. § 1099c-1(a)(1) ....................................................................9

28 U.S.C. § 1346(a)(2) ..........................................................................7

28 U.S.C. § 1491(a)(1) ..........................................................................7

**Regulations**

34 C.F.R. § 685.206(c) (1995) ..............................................................5

34 C.F.R. § 685.400 ............................................................................14

34 C.F.R. § 685.401(a) ........................................................................11

34 C.F.R. § 685.401(b)(3) .....................................................................8

34 C.F.R. § 685.405(d) ........................................................................13

34 C.F.R. § 685.407(a) ..........................................................................8

34 C.F.R. § 685.409 ............................................................................11

59 Fed. Reg. 61664 (Dec. 1, 1994) ...................................................5, 6

60 Fed. Reg. 37768 (July 21, 1995) .......................................................6

81 Fed. Reg. 39330 (June 16, 2016) ......................................................6

87 Fed. Reg. 65904 (Nov. 1, 2022) ...............................................*passim*

**Other Authorities**

Fed. R. App. P. 35(a)(2) ......................................................................17

Fed. R. Civ. P. 23 ...............................................................................11

Black's Law Dictionary (6th ed. 1990) ..................................................4

## INTRODUCTION

The Department of Education faces a high bar to justify en banc review of a unanimous panel decision postponing the effective date of an agency rule, pending final judgment. *See* Institutional Eligibility Under the Higher Education Act of 1965, 87 Fed. Reg. 65904 (Nov. 1, 2022) ("the Rule"). The Department's petition ignores the aspects of the Rule it cannot defend and selectively disputes parts of the panel decision—one that neither diverges from precedent nor merits reversal. Indeed, courts of appeals routinely strike down agency rules that contravene statutes or are arbitrary and capricious. The Department identifies no conflict with any court decision, either on the merits or in postponing a defective regulation's effective date for everyone subject to it, not just the litigants. Moreover, the Department's unfounded quarrel with the panel's assessment of whether appellant Career Colleges and Schools of Texas ("CCST") demonstrated a reasonable likelihood of success on the merits is not a matter of exceptional importance justifying en banc intervention.

The Rule (summarized at Op. 3-7) represents a striking arrogation of unauthorized administrative power. Section 455(h) of the Higher Education Act grants the Department a limited rulemaking power: to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of loans under the Direct Loan Program. 20 U.S.C.

1

§ 1087e(h). From that single sentence, the Department issued a sprawling rule that converts defenses into affirmative borrower "claims" that are not time-limited. Even though Section 455(h) vests the Department with power only to "*specify*" defenses "in regulations," the Department proclaims authority to adjudicate both borrower claims and recoupment actions against schools. The Department even declares the power to adjudicate state-law claims such as breach of contract. These provisions both exceed the Department's statutory authority and are unconstitutional. Only Congress can authorize such administrative adjudications, and only for public rights—which state-law claims and recoupment actions are not.

The Department compounded this overreach by stacking the deck in favor of loan-discharge applicants and against schools. The Rule imposes strict liability upon schools for even unintentional omissions or misstatements, and it institutes a group-claim process that presumes that *every* borrower in the group decided to attend or continue attending the school based on the alleged act or omission, of whatever kind. The Rule denies schools discovery and cross-examination, rendering rebuttal of this presumption practically impossible. And if a borrower claim is proven, the Rule would discharge the borrower's entire student debt, even as to loans that preceded (and thus were not caused by) the school's conduct. The Rule's objective is to streamline claim approvals and maximize discharges without

regard to actual proof—ultimately leaving schools and taxpayers to foot the bill for the Department's backdoor loan-forgiveness program.

Across 29 pages of analysis (Op. 26-54), the panel identified no fewer than nine categories of legal defects in the Rule. As the panel observed, not only are the Rule's substantive provisions arbitrary, but its procedural provisions "are policy-driven mechanisms designed to selectively target proprietary schools," not "to further the truth-seeking process." Op. 48. The panel rightly postponed the Rule's effective date given its likely invalidity and the irreparable injury it threatens. En banc review is unwarranted.

## ARGUMENT

### I. The panel's unanimous assessment of CCST's likelihood of success does not merit en banc review.

The Department selectively disputes the panel's assessment of CCST's likelihood of success on the merits, but it fails to demonstrate error by the panel, much less the exceptional importance of the matters decided.

#### A. Section 455(h) does not empower the Department to authorize borrower "claims" against the United States.

Section 455(h) is limited in scope and plain in meaning. It provides that "the Secretary *shall specify in regulations* which acts or omissions of an institution of

higher education a borrower may *assert as a defense* to repayment of" a Direct Loan. 20 U.S.C. § 1087e(h).[1]

Contrary to the Department's contentions (Pet. 8-9), asserting a defense is the opposite of asserting a claim. As the panel observed, the term "'defense' … has a well-established common-law meaning" that Congress is presumed to incorporate: namely, grounds asserted "to diminish plaintiff's cause of action or defeat recovery." Op. 28 (quoting Black's Law Dictionary (6th ed. 1990)). The Department rejoins (Pet. 8-9) that a defense can exist prior to any contract-enforcement action. But the statute empowers the Secretary only to define what school conduct a borrower "may *assert* as a defense." 20 U.S.C. § 1087e(h). A party can only assert a defense if an offensive action has been commenced. Congress routinely distinguishes between assertion of claims and defenses, and here authorized only the latter. Op. 29.

Constitutional principles militate against the Department's interpretation. "Only Congress may create privately enforceable rights, and agencies are empowered only to enforce the rights Congress creates." Op. 33 (quoting *Chamber of Com. v. Dep't of Lab.*, 885 F.3d 360, 384 (5th Cir. 2018)). The Rule likens borrower-discharge claims to claims of "restitution" or "rescission" against the Government. 87 Fed. Reg. at 65914. But such claims can be brought in a judicial

---

[1] Emphasis is added unless otherwise noted.

or administrative tribunal only if Congress unequivocally waives sovereign immunity against those claims, which it has not done here. Op. 40 n.18; *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992); *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760-61 (2002). The Department offers no response to the panel's analysis.[2]

The Department wrongly urges (Pet. 8) that no Secretary has ever interpreted Section 455(h)'s defenses as limited to collection proceedings. The Secretary's original contemporaneous interpretation in the 1994 regulation did just that. It provided: "*In any proceeding to collect on a Direct Loan,* the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law," and that "[t]hese proceedings include, but are not limited to" tax-refund-offset, wage-garnishment, salary-offset, and credit-bureau-reporting proceedings. 34 C.F.R. § 685.206(c) (1995), promulgated in *William D. Ford Direct Loan Program*, 59 Fed. Reg. 61664, 61696 (Dec. 1, 1994). The Department now contends (Pet. 4 n.1) that the "include, but are not limited to" language means

---

[2] The Department claims to be "unaware of any legal or regulatory regime that prohibits a party from contesting contractual obligations until *after* the counterparty takes legal action to enforce them." Pet. 9 (emphasis in original). But government contractors are barred from seeking declaratory judgments regarding contract obligations (or defenses to performance) precisely because the United States has not waived sovereign immunity for such actions. *See N. Star Alaska v. United States*, 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc).

that the four enumerated proceedings are not exhaustive, but it ignores that this phrase modifies "these proceedings" (*i.e.*, "any proceeding to collect on a Direct Loan"). 59 Fed. Reg. at 61696. The 1994 regulation specifies defenses to be asserted in independently authorized collection proceedings, including those listed. *See* Op. 30-32. It simply extended to direct borrowers the right of earlier borrowers to present defenses "during the collection process." 60 Fed. Reg. 37768, 37770 (July 21, 1995).

Although in scattered and "highly unusual circumstances" the Department has discharged loans outside of collection proceedings, Op. 30, the Department admitted in 2016 that "[t]he current regulations for borrower defense do not provide a process for claims." 81 Fed. Reg. 39330, 39346 (June 16, 2016). Faced with the 2015 Corinthian Schools bankruptcy, the Department reimagined this "rarely used" statute, 87 Fed. Reg. at 65979, to devise a multi-billion-dollar loan-forgiveness and liability-shifting regime. The major-questions doctrine forbids this maneuver. *See West Virginia v. EPA*, 597 U.S. 697, 722-23 (2022).

### B. The Department lacks statutory authority to adjudicate borrower-defense claims.

Even if Section 455(h) authorized the Department to specify borrower-defense "claims," nothing in the statute authorizes the Department to adjudicate them. Judicial fora are available for "any claim against the United States founded ... upon ... any regulation of an executive department, or upon any express or

implied contract with the United States." 28 U.S.C. § 1491(a)(1); *see also id.* § 1346(a)(2). "Agencies have only those powers given to them by Congress," *West Virginia*, 597 U.S. at 723, and it is Congress's prerogative to commit the adjudication of public rights to administrative agencies rather than courts, *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855). "The Supreme Court has repeatedly emphasized that 'when Congress meant to confer adjudicatory authority ... it did so explicitly and set forth the relevant procedures in considerable detail.'" Op. 40 (quoting *Bank One Chi., N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 274 (1996)).

As the panel held, Section 455(h) does not authorize the Department to adjudicate borrower-discharge claims: its text "speaks only to the Secretary's power to promulgate *regulations*—not the power to *adjudicate* cases based on its regulations." Op. 40 (emphasis in original). The power to make rules does not subsume the power to adjudicate violations of those rules. *RLC Indus. Co. v. Comm'r*, 58 F.3d 413, 417-18 (9th Cir. 1995). Indeed, when Congress has authorized the Department to "cancel" or "discharge" student loans, it does so expressly. Op. 29.

The Department is silent about the source of its authority to adjudicate borrower-discharge claims. It points to nothing, citing (Pet. 9) only a statute expressly allowing the Department to garnish wages. *See* 20 U.S.C. § 1095a. The

Department cites (Pet. 8) a few district court cases, but they are either inapposite or

devoid of statutory analysis.[3] To fill the gap, the Department relies (Pet. 7) on its

(false) narrative of consistent, decades-long administrative practice. But agencies

cannot acquire statutory authority by adverse possession. Op. 30.

Furthermore, the Department's adjudication of state-law claims, *see* 34

C.F.R. §§ 685.401(b)(3), 685.407(a)(1)-(2), which are not federal public rights,

independently violates both Article III and the Seventh Amendment. *See Stern v.*

*Marshall*, 564 U.S. 462, 490-91 (2011); *Granfinanciera, S.A. v. Nordberg*, 492

U.S. 33, 51-52 (1989). The panel did not "mistakenly believe[]" (Pet. 10) that the

Rule authorized borrower claims directly against schools. It rejected the

Department's attempt to convert private rights into public rights by bifurcating

actions into borrower-discharge proceedings against the Department and

recoupment actions against schools, wherein schools are presumptively liable for

---

[3] Citing immigration cases, the district court in *Vara v. DeVos*, No. CV-19-12175-LTS, 2020 WL 3489679, at *3 (D. Mass. June 25, 2020), declared that "where … Congress has delegated to an agency the task of administrating federal programs, that agency undertakes a non-discretionary duty to adjudicate claims or applications that are essential to the administration of those programs." But, unlike here, Congress had given the immigration agency adjudicatory authority. *See Nigmadzhanov v. Mueller*, 550 F.Supp.2d 540, 546 (S.D.N.Y. 2008). The other cases cited by the Department are off point. *See Calvillo Manriquez v. Devos*, 345 F.Supp.3d 1077, 1100 (N.D. Cal. 2018) (finding discharge authority under prior regulations to be discretionary rather than mandatory); *Sweet v. Cardona*, 641 F.Supp.3d 814, 833 (N.D. Cal. 2022) (approving class-action settlement).

recoupment based on the outcome of the borrower-discharge proceeding. Op. 43-44.

The Department's lack of authority to adjudicate borrower-discharge claims is fatal to the Rule and its rehearing petition.

### C. The Department lacks statutory authority to adjudicate recoupment claims.

The Department likewise lacks authority to adjudicate recoupment claims against schools. The Department attempts (Pet. 11) to ground its authority in an amalgam of statutes not addressed in its rulemaking, but to no avail. The cited provisions governing audits and program reviews, and authorizing the Secretary to impose financial and other sanctions after reviewing those determinations, say nothing about recoupment claims for discharged debt. *See* 20 U.S.C. §§ 1094(b)-(c), 1099c-1(a)(1). Nor is the provision requiring schools to accept financial responsibility for breaching Title IV agreements, 20 U.S.C. § 1087d(a)(3), an independent source of adjudicatory authority over recoupment claims. Op. 41-42.

The Department next relies on *Chauffeur's Training School, Inc. v. Spellings*, 478 F.3d 117 (2d Cir. 2007), but does not address the reasons why the panel distinguished that case—not the least of which was that it "did not review an adjudicatory regime created out of whole cloth and lacking any statutory basis." Op. 42. The Department has no answer to the panel's careful analysis, and it fails to show grounds for the en banc court to rehear this case.

**D.    The other panel assessments challenged by the Department are neither erroneous nor exceptionally important.**

The Department makes glancing arguments against other assessments by the panel, but none warrants en banc review.

The panel identified manifold reasons why the Rule's substantive provisions were likely invalid, including non-compliance with Section 455(h) and a lack of reasoned explanation. Op. 32-39. The Department does not address the panel's reasoning, but offers (Pet. 12) the *ipse dixit* that these prohibitions are equivalent to consumers' remedies for injuries from unconscionable conduct under Texas law. Not so. As the panel explained, the Rule

- arbitrarily creates strict liability for even inadvertent and trivial errors by school employees or contractors;

- presumes (in group claims) that all borrowers in the group reasonably made their attendance decisions based on that error;

- provides no mechanism for the school to rebut that presumption; and

- discharges the entirety of the student's debt and shifts liability to the school even for debt it did not cause. *See* Op. 32-39, 45-46.

The Department now contests (Pet. 12) the last point, even though it did not dispute it before the panel, *see* Op. 33. It does not explain how the panel erred, only that "it cited no portion of the rule that authorizes that procedure." Pet. 12. But the regulation, cited at Op. 3 n.2, is crystal clear. The borrower defense applies

to "all amounts owed to the Secretary on a Direct Loan including a Direct Consolidation Loan that was used to repay," *inter alia*, FFEL Program Loans or Perkins Loans, 34 C.F.R. § 685.401(a), which have not been issued since 2010 and 2017 respectively, 87 Fed. Reg. at 65905 n.3. A "covered loan" includes any loan that "*could be* consolidated into a Federal Direct Consolidation Loan," 34 C.F.R. § 685.401(a), and the Department is explicit that borrowers can receive discharge of their entire debt by consolidating prior loans *after* a borrower-defense adjudication, 87 Fed. Reg. at 65916. Thus, the Rule provides for full discharge of debt incurred before (and thus not caused by) a school's act or omission, and the school can be held liable for that amount. 34 C.F.R. §§ 685.401(a), 685.409. "The combination of full discharge with the absence of a causation requirement essentially constitutes a punitive damage remedy arising from the borrower-defense provision." Op. 33.

Next, the Department complains (Pet. 12-13) that the panel wrongly relied on Federal Rule of Civil Procedure 23 as constraining the Rule's group-claim process. Not so; the panel merely reasoned that the Department misused unwarranted presumptions to determine matters of individualized proof collectively without due-process safeguards like those in Rule 23. Op. 45-46.

Finally, the panel did not err in finding that the Rule's closed-school-discharge provisions violate the statute, which provides for relief only where a

student "is unable to complete the program in which such student is enrolled *due to the closure of the institution*." 20 U.S.C. § 1087(c)(1). While liability is only assessed after the school ceases operations, Pet. 13 n.2, the Rule unlawfully *extends* liability to students who left before the school actually closed, and it does so without requiring proof that the closure prevented completion of their program, Op. 49-54.

\* \* \*

In sum, the Department does not lay a glove on the panel's analysis; it certainly has not shown errors of exceptional importance.

## II.     The panel granted appropriate relief.

The Department next contests (Pet. 13-15) the relief granted by the panel. It misunderstands both the panel's opinion and administrative law.

*First*, the Department argues (Pet. 14) that the panel found irreparable injury "based largely … on the risk that one of plaintiff's members could be subject to recoupment for loans discharged under the rule's standards," and that postponement of the Rule is unnecessary because the Department could merely be enjoined from imposing recoupment liability under the Rule.

The Department misstates the panel's holding on irreparable injury. CCST never even argued recoupment risk as irreparable injury (since a judicially reviewable recoupment award is not irreparable). Rather, CCST argued, and the

panel found, irreparable injury from (1) schools' compelled compliance with the Final Rule's new standards and the associated unrecoverable recordkeeping and staff costs, Op. 18-22; (2) altered business operations and missed opportunities caused by the closed-school-discharge provisions, *id.* at 22-23; and (3) subjection to an unauthorized agency tribunal, *id.* at 23-25.

The Department's petition never addresses the first two categories of irreparable injury. These harms do not depend on an impending threat of recoupment liability. Nor do they apply only to schools with pending borrower-defense claims. They apply to all Title IV schools, including CCST members. As the panel noted, "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." Op. 24 (emphasis in original) (cleaned up) (quoting *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)). These harms—left unmentioned in the Department's petition—independently support the panel's decision to stay the Rule's effective date in part.

As to the third category, the panel's finding of irreparable harm from pending claims likewise has nothing to do with recoupment liability. The panel based its finding on the harms posed by the Rule's "new adjudication *procedures*"—both discharge and recoupment proceedings. Op. 24. Under those procedures, schools must participate in discharge proceedings or else forfeit any recoupment defense. 34 C.F.R. § 685.405(d). The harms of "costly and dubiously

authorized administrative adjudications," Op. 24, which require schools to spend at least $17,611 responding to each claim, *id.* at 25, regardless of their ultimate liability, can only be averted by postponing the effective date of those provisions.

The panel found that these harms are imminent because roughly 200,000 Post-Class claims from the *Sweet* settlement are pending, which are statistically almost certain to include at least one CCST member. Op. 23.[4] Contrary to the Department's contention, the panel correctly determined that the Rule's procedures would apply to these claims. While the "*merits*" of those claims will be assessed under an older standard,[5] the Rule's *procedures* apply to all claims "pending with the Secretary on July 1, 2023," 34 C.F.R. § 685.400, which include Post-Class claims. Avoiding these harms likewise justifies postponing the Rule's effective date.

*Second*, because the Department fails to confront the panel's findings of irreparable injury, its argument for an alternative remedy falls flat. The Department proposes (Pet. 14) that "the panel could have afforded plaintiff complete relief

---

[4] The Department has not disclosed the schools subject to those claims, but it has never denied that that they include at least one CCST school or are statistically certain to do so.

[5] Settlement Agreement at 11, *Sweet v. Cardona*, No. C 19-03674 WHA (N.D. Cal. June 22, 2022), ECF No. 246-1 (for Post-Class claims, "the Department will apply the standards in the borrower defense regulations published by the Department on November 1, 2016").

from the asserted threat of financial liability by enjoining the Department from seeking recoupment against plaintiff's members for discharges that would not have been granted under earlier regulations." But, again, the "threat of financial liability" is not the injury, and a temporary injunction against recoupment would redress none of the injuries found by the panel.

Regardless, the Department forfeited this argument by not raising it to the panel. The Department's response brief argued that a stay of the Rule's effective date should apply (1) only for CCST's members and (2) only to provisions that cause those members irreparable harm. *See* ECF No. 55 at 52-53. It did not argue that the panel should consider the alternative of enjoining the Department from seeking recoupment. This failure "waives [the argument] for purposes of en banc consideration." *Lucio v. Lumpkin*, 987 F.3d 451, 478 (5th Cir. 2021). The Department cannot raise this argument for the first time now.

*Third*, the Department asserts (Pet. 15) that "constitutional and equitable principles ... require this Court to limit relief to the named parties in this case." This Court rejects any such categorical requirement. *Texas v. United States*, 809 F.3d 134, 187-88 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547 (2016) (mem.). And the Department's petition does not even cite, let alone address, the elephantine statute in the room. Section 705 of the Administrative Procedure Act ("APA") allows this Court to "issue all necessary and appropriate process to

*postpone the effective date* of an agency action or to preserve status or rights

pending conclusion of the review proceedings." 5 U.S.C. § 705. A postponement

order does not operate in personam but merely temporarily divests an agency order

of enforceability. *Nken v. Holder*, 556 U.S. 418, 428 (2009).

This provision must be interpreted in light of the APA's authorization of

ultimate relief, namely, to "hold unlawful and set aside agency action." 5 U.S.C.

§ 706(2). As the panel held, the APA does not provide for party-specific relief from

a broadly applicable rulemaking. An agency rule that is "h[e]ld unlawful and set

aside" is unlawful and set aside for everyone, not just the named plaintiffs. *See* Op.

55-57; *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989). This

comports with the recent practice of both this Court and the Supreme Court. Op. at

56 (collecting cases). Indeed, the Supreme Court has characterized APA plaintiffs

as "private attorney[s] general" who may vindicate the public interest beyond

redress of their own injuries. *Sierra Club v. Morton*, 405 U.S. 727, 737-38 (1972).

And the Department cites no binding authority to the contrary.

Party-limited relief would undermine judicial review. With regard to § 705,

it would be unworkable and chaotic if every property owner aggrieved by a

wetlands regulation; every small business or worker aggrieved by an OSHA

regulation; or every veteran aggrieved by a benefits regulation would have to seek

the same temporary relief from unlawful rules in individual or representative

actions. Nor does the Department address the obvious problem that would arise if ultimate relief were party-limited—a patchwork of party-specific regulations that would debilitate any effort to establish uniform federal standards or procedures. Such a patchwork is precisely what the Department purportedly seeks to avoid. *See* 87 Fed. Reg. at 65933 ("The current lack of a uniform Federal standard for all claims risks substantial borrower confusion …."); *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 388 (5th Cir.) (cleaned up) (finding that the government's argument against a nationwide injunction is undermined by its "purported interest in consistency across government in enforcement of [its] government-wide vaccine policy"), *judgment vacated as moot*, 144 S.Ct. 480 (2023).

The Department suggests (Pet. 15) that because the Rule was effective for a month prior to postponement, borrowers would somehow be prejudiced. But it does not represent that it processed any claims in that month. Regardless, no borrower is entitled to an unlawful discharge; if the Department ultimately prevails, deserving borrowers can receive their discharge. At this preliminary juncture, the panel's relief merely preserving the status quo is neither incorrect nor "a question of exceptional importance." Fed. R. App. P. 35(a)(2).

## CONCLUSION

The petition for rehearing should be denied.

Dated: June 3, 2024

Respectfully submitted,

Philip Vickers
Katherine Hancock
CANTEY HANGER LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
pvickers@canteyhanger.com
(817) 877-2800

 /s/ Stephen B. Kinnaird
Stephen B. Kinnaird
Allyson B. Baker
Michael Murray
Sameer P. Sheikh
Tor Tarantola
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
stephenkinnaird@paulhastings.com
(202) 551-1700

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(d) and 5th Cir. R. 25.2.5, I hereby certify that

on June 3, 2024, I caused the foregoing to be filed via the Court's CM/ECF system

and served by email on the following counsel for Defendants-Appellees:

Christine L. Coogle (christine.l.coogle@usdoj.gov)
Cody T. Knapp (cody.t.knapp@usdoj.gov)
R. Charlie Merritt (robert.c.merritt@usdoj.gov)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005

Joshua Marc Salzman (joshua.m.salzman@usdoj.gov)
Jennifer L. Utrecht (jennifer.l.utrecht@usdoj.gov)
U.S. Department of Justice
Civil Division
Appellate Staff
950 Pennsylvania Avenue NW
Washington, DC 20530

*/s/ Stephen B. Kinnaird*
Stephen B. Kinnaird

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the word limit of Fed. R. App. P. 35(e) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,897 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced, 14-point Times New Roman font. Additionally, I certify that any required redactions have been made in compliance with 5th Cir. R. 25.2.13.

Dated: June 3, 2024

*/s/ Stephen B. Kinnaird*
Stephen B. Kinnaird